UNITED STATES v. 288 PACKAGES OF MERRY WORLD TOBACCO.

(District Court, D. West Virginia. June 28, 1900.)

INTERNAL REVENUE—CONSTITUTIONALITY OF STATUTE —PRESCRIBING CONTENTS OF PACKAGES OF TOBACCO.

Act July 24, 1897, § 10, cl. 3, amendatory of Rev. St. § 3394, and providing that "none of the packages of smoking tobacco and fine cut chewing tobacco and cigarettes prescribed by law shall be permitted to have packed in, or attached to, or connected with, them, any article or thing whatsoever, other than the manufacturers' wrappers and labels, the internal revenue stamp and the tobacco or cigarettes, respectively, put up therein, on which tax is required to be paid under the internal revenue laws," is constitutional and valid, and the placing of coupons in packages of smoking tobacco, which, when returned in certain numbers, entitle the holders to premiums, is a violation of such statute, which subjects the manufacturer to the fine and forfeiture provided by Rev. St. § 3456.

Information on behalf of the United States for the forfeiture of certain packages of smoking tobacco for violation of the internal revenue laws.

Joseph H. Gaines, Dist. Atty. (Charles J. Faulkner, special counsel), for the United States.

John De Witt Warner and Henry M. Russell, for defendant.

JACKSON, District Judge. The United States filed an information on the 17th day of October, 1898, in this district, against 288 packages of Merry World Smoking Tobacco. The information charges that these packages contained, in violation of law, what is known as the "Merry World Tobacco Coupon," offering premiums to the holders of these coupons, the amount of which was to be determined upon the number of coupons returned to the manufacturer. It is alleged that the placing of any article, other than that authorized by the statute of the United States, in such packages, was a violation of the tenth section of the act of July 24, 1897, amending section 3394, Rev. St. U. S. It is admitted that each package of tobacco contained one of these coupons, and it is here stipulated that all informalities and omissions in the pleadings are waived by counsel of the parties to this proceeding. This information is founded upon the third clause of section 10, Act July 24, 1897, amending section 3394, Rev. St., which declares that "none of the packages of smoking tobacco and fine cut chewing tobacco and cigarettes prescribed by law shall be permitted to have packed in, or attached to, or connected with, them, any article or thing whatsoever, other than the manufacturers' wrappers and labels, the internal revenue stamp and the tobacco or cigarettes, respectively, put up therein, on which tax is required to be paid under the internal revenue laws." It is unnecessary at this time to review the history of the legislation of congress relating to the various acts passed known as the "Internal Revenue Laws." Congress, in its wisdom, saw fit to resort to this mode of taxation for the purpose of raising revenue to defray the expenses of the government. It must be conceded at the threshold of the discussion that to congress alone belonged the power to enact laws for raising revenue for the support and maintenance of the government. Section 8 of article 1 of the

constitution expressly declares that congress shall have power to lay and collect taxes. This is an express grant which confers this power upon congress alone, and such power is independent of the co-ordinate branches of the government. If, then, under the constitution, congress alone possesses this power, it follows that it alone possesses the power to provide the manner, the form, and the means by which taxes are to be levied, provided that congress does not exceed the grant of power conferred under the constitution.

Assuming this position to be correct, the first question for consideration is, is the statute upon which this proceeding is founded within the legitimate sphere of the legislative power of congress? Questions of kindred character, involving the questions now under consideration, have been so often reviewed and passed upon by the supreme court of the United States that it would seem to be almost a work of supererogation upon the part of this court, at this late day, to enter the domain of discussion of the question involved in this case, for the reason that, in the opinion of this court, the judicial path has been made so clear by numerous decisions, commencing with the decision of that great jurist Chief Justice Marshall in the case of Fletcher v. Peck, 6 Cranch, 128, 3 L. Ed. 175. He announces the doctrine in that case that, when the question for consideration before the court was "whether a law be void for its repugnancy to the constitution, it is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. * * * The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

In the case of McCulloch v. Maryland, 4 Wheat. 423, 4 L. Ed. 5, Judge Marshall, in considering the constitutionality of an act of congress, states the law to be:

"Where the law is not prohibited, and is really calculated to effect any of the objects intrusted to the government, to undertake here to inquire into the degree of its necessity would be to pass the line which circumscribes the judicial department. and to tread on legislative ground. This court disclaims all pretensions to such power."

In the same opinion he says:

"Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."

It would seem, therefore, that all means which are necessary to be exercised for the legitimate purpose of levying taxes and collecting the same may be employed to that end. In the case of U. S. v. Fisher, 2 Cranch, 396, 2 L. Ed. 317, the learned chief justice announced the doctrine that "any means which are in fact conducive to the exercise of a power granted by the constitution," or (as he stated in the case of McCulloch v. Maryland) "any means calculated to produce the end that congress had in view, were legitimate and constitutional." This same doctrine was affirmed in the Legal Tender Cases, 12 Wall. 531, 20 L. Ed. 306, Justice Strong delivering the opinion of the court; and in the case of Bank v. Fenno, 8 Wall. 548, 19 L. Ed. 487, in which

Chief Justice Chase, who in his day was one of the ablest constitutional lawyers in the country, speaking for the supreme court, announced the doctrine "that the judicial cannot prescribe to the legislative department of the government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not in the courts, but to the people, by whom its members are elected." It would seem to be a well-settled principle of constitutional law—in fact, I may say it is now elementary—that, where there is not an express grant in the constitution, yet, in the absence of a grant of power applied to a specific case, there is always an implied power, which is incidental and auxiliary to the constitution, to execute and carry out its provisions, as in this case the constitution confers the power upon congress to lay and collect taxes, but leaves it to the wisdom of congress to prescribe the mode, manner, and means of levying and collecting the same. What, then, is the object of the statute under consideration? It is apparent that its only purpose is to protect and secure the government in raising its revenues upon the particular subject of taxation specified in it. In the language of Chief Justice Marshall: "Is the end legitimate, and are the means adopted and used adapted to carrying out the purpose and object of congress in passing the bill?" As was well said by the court in the case of Hepburn v. Griswold, 8 Wall. 615, 19 L. Ed. 523:

"It is finally settled, so far as judicial decisions can settle anything, that the words, 'all laws necessary and proper for carrying into execution powers expressly granted or vested,' have in the constitution a sense equivalent to the words, 'laws not absolutely necessary, indeed, but appropriate—plainly adapted—to constitutional and legitimate ends: laws not prohibited, but consistent with the letter and spirit of the constitution; laws really calculated to effect the objects intrusted to the government.' "

If the principle just announced be correct, we are at a loss to see how an act of congress can be held to be unconstitutional which has a legitimate object, and which is plainly appropriate to secure the collection of taxes provided for in the act. The act in itself is merely an incidental and auxiliary power, which is found in the constitution, and is necessary, as it seems to us, to execute the express grant of power upon which this statute is founded. To declare this act of congress unconstitutional would have a far-reaching effect, and would cripple the powers of the government in the collection of revenues for its maintenance and support. I cannot reach the conclusion, in the language of Chief Justice Marshall, that the means employed by congress were not "adapted to the end." I do reach the conclusion, therefore, that the act in itself is constitutional, and that congress had the power, under an express grant in the constitution, to adopt such means as would secure the end it had in view.

Having disposed of the constitutional question, I will now consider what was the purpose of congress in declaring what packages of smoking tobacco should contain. There could be but two reasons for the inhibition and restriction contained in the statute: First, it was the intention of congress to secure her revenue; and, second, to protect the purchaser of manufactured chewing and smoking tobacco from fraud. The statute under consideration expressly forbids the manu-

facturer to place any article or thing whatsoever of a foreign nature in the package, for the reason that, the tax being on the weight of the package, it is essential that it does not contain foreign matter. The manner of packing the tobacco, the size of the package, and what it should contain, have been fixed by the statute and the rules and regulations prescribed by the commissioner of internal revenue. This statute, and these rules and regulations prescribed by the commissioner, were not for a vain purpose. If the statute is not prohibited by the constitution, and effects the object and purpose that congress had in view, can the restriction operate an injustice to any one? I think not. Congress alone decided for itself how the packages of tobacco should be put up, and what each package should contain. I am at a loss to conjecture what cause of complaint can be made by the manufacturer when by statute the size of the box and its contents are fixed. All the manufacturer has to do is to comply with the law, and not place any other article or thing whatsoever in the box, unauthorized by the statute. It was not intended that the boxes should be so packed as to enable the manufacturer to establish a gift enterprise. When the government determines to levy a tax upon any thing or article liable to taxation, it necessarily has a purpose. Its first object is to exercise its powers of taxation, and its second object is to prevent fraud upon the revenue, and to protect the purchasers of the manufactured article and the public from fraud. Most stringent statutes have been enacted for the protection of the government in the collection of its revenue from distilled and alcoholic liquors, and from oleomargarine, and in every case that has come under my observation the courts have uniformly sustained them as both necessary and just. I cannot adopt the view of counsel for the defendant in this case. If their contention should be sustained, it would embarrass the government in the collection of her revenue, and tend to throw the administration of the great internal revenue system of this country into almost endless confusion.

As I have reached the conclusion that congress had the power to tax the subjects made under consideration, it follows that in the exercise of this right it may prescribe the manner or mode of enforcing the collection of the revenue, and, as in this case, fix the amount of taxation upon the article assessed, as well as to prescribe the manner of packing, the size of the box, and the weight of its contents. I reach the conclusion that the insertion in a package of tobacco of any other substance or thing than the tobacco itself, be it ever so small in size or light in weight, is a violation of the statute, and renders the party violating it responsible for such violation.

In this connection it is claimed that there is no statute that imposes a penalty for the violation of section 10. It is a quasi criminal statute, inhibiting and restraining manufacturers of tobacco from inserting any material other than tobacco in the package. It is claimed that there is no special provision in the act of 1897 which punishes a party for the violation of section 10. Congress sometimes omits, in the haste of legislation, to fix a penalty for the violation of some of its statutes; but in this case it is unnecessary to rely upon the provisions of the act of 1897. There is a general act of the Revised

Statutes (section 3456) which, in my judgment, provided the remedy for a violation of this statute.

Other questions have been presented to the court for its consideration, but, in the view the court takes of this case, it is unnecessary to notice them. For the reasons assigned, the court is of opinion that the defendants have violated section 10, and that the punishment is imposed by section 3456.